## REDUS v. MATTISON.

No. 1412.  Opinion Filed January 16, 1912.

(121 Pac. 253.)

1. **APPEAL AND ERROR**—Justices of the Peace—Presentation of Questions in Trial Court—Decisions of Intermediate Courts—Appeal From Justice of the Peace. Under sec. 6381 of Comp. Laws 1909, which provides that, in cases where a defendant has been arrested, or his property attached, judgment must be entered at the close of the trial, and in other cases it must be entered, either at the close of the trial, or, if the justice then desires further time to consider, on or by the fourth day thereafter, both days inclusive, it was erroneous for a justice to take the case under consideration from the day of the trial on the 14th day of the month until the 18th before rendering judgment; but a judgment rendered on the 18th was not void, and the error cannot be raised for the first time on appeal to this court.

2. **JUSTICES OF THE PEACE**—Review of Decisions—Appeal—Constitutional Provision. Sec. 14 of article 7 of the Constitution of Oklahoma requires all cases appealed from a court of a justice of the peace to be tried de novo in the county court.

3. **EVIDENCE**—Best and Secondary Evidence—Admissibility. It is proper to admit oral testimony as to the contents of a writing, when it is first shown that the writing is lost and cannot be produced.

4. **APPEAL AND ERROR**—Breach of Contract—Instructions. Where an instruction could not have misled the jury, it is not cause for reversal, though some of the language used is inaccurate.

5. **CONTRACTS**—Actions for Breach—Instructions. It is not error to instruct the jury that, though defendant contracted with a third party to furnish certain building stone, it did not necessarily follow that he did not contract with plaintiff, but that if there was a contract with a third party that was a circumstance for their consideration, in determining whether there was a contract with plaintiff.

6.  **TRIAL**—Instructions. It was not error to refuse to instruct the jury that plaintiff had a lien on the building for work done and materials furnished, where plaintiff had sued on contract, and the jury was instructed that plaintiff could not recover, unless he proved the contract by a preponderance of the evidence.

(Syllabus by Rosser, C.)

*Error from Wagoner County Court; W. T. Drake, Judge.*

Action by M. M. Mattison against W. R. Redus. Judgment for plaintiff, and defendant brings error. Affirmed.

*Brown & Stewart* and *S. F. Wiggins,* for plaintiff in error.

*Evert P. Rhea,* for defendant in error.

Opinion by ROSSER, C. The defendant in error, M. M. Mattison, hereinafter called plaintiff, brought this action against W. R. Redus, plaintiff in error, hereinafter called defendant, in the justice court of Porter township, Wagoner county, Okla., to recover an amount alleged to be due him for getting out certain stone used in defendant's building in Tullahassee, Okla. There was a judgment for plaintiff in the justice court. The defendant appealed to the county court of Wagoner county, where the case was tried before a jury, and there was a verdict and judgment for plaintiff for $63.45. The defendant has appealed from the judgment, and assigns a number of errors which may be considered under four heads: First. That the judgment of the justice of the peace is void. Second. That the verdict is not sustained by the evidence. Third. That the court erred in the admission of testimony offered by plaintiff, and in excluding evidence offered by defendant. Fourth. That the court erred in giving instructions numbered 2, 7, 9, and 11, and in refusing to give instructions, requested by the defendant, numbered 3 and 5.

The case was tried before the justice of the peace, without a jury, on the 14th of March, 1908, and the justice, on his own motion, took the case under advisement until March 18th, at which time he rendered judgment for plaintiff for $66, with interest and attorney's fee.

The defendant claims that, under provisions of section 6381 of Comp. Laws 1909, the justice had lost jurisdiction to render

judgment at the time it was rendered.   That section is as follows:

"Upon a verdict, a justice must immediately render judgment accordingly.   When the trial is by the justice, judgment must be entered immediately after the close of the trial, if the defendant has been arrested, or his property attached; in other cases it must be entered either at the close of the trial, or, if the justice then desires further time to consider, on or by the fourth day thereafter, both days inclusive."

This section was taken from the statutes of Kansas, and was construed by the Supreme Court of that state in the case of *Stewart v. Waite,* 19 Kan. 218.   It was held in that case that, where the trial was had on the 18th day of the month, and the case was held under advisement until the 22d day of the month, it was erroneous for the justice to enter judgment.   But it was also held that the judgment was not void, but was simply an error for which the district court should have reversed the judgment of the justice of the peace.

In the case at bar, the defendant did not raise this objection in the county court, but raises it for the first time in his brief. It is a rule that mere errors, not jurisdictional, cannot be taken advantage of for the first time in the Supreme Court, and for that reason the objection comes too late.   Besides, this action was brought since the admission of the state into the Union, and, under section 14 of article 7 of the Constitution of this state, appeals from judgments of justices of the peace are tried *de novo* in the county court.   The action of the justice in rendering judgment out of time being merely an error, and not being such as to divest the justice court of jurisdiction, the county court had the right to try the case on appeal, and to hear and dispose of all questions of law and fact, as if the case had originally been brought there. *Gulf Pine Line Co. v. Vanderberg,* 28 Okla. 637, 115 Pac. 782, 34 L. R. A. (N. S.) 661.

The plaintiff testified that as he was going to Tulsa, to a Republican convention, the defendant, who was also on the train, asked him if he got out certain rock used in the schoolhouse at Porter, and he replied that he did; that defendant then told him to get out some just like that; that plaintiff asked what kind of rock he wanted, and he replied he wanted good building stone;

that, after further negotiation, defendant said, "All right, go ahead and get it out"; that plaintiff asked him who paid for it, and defendant replied, "I will." And he further testified that at the depot of Tulsa, after the convention, he went to the defendant and again asked who paid for the work, and defendant again said he would. The contract, as testified to by the plaintiff, related to rubble stone. A witness named Hardridge, who, defendant claimed, was the person with whom he contracted to get out the stone, testified to substantially the same conversation. The defendant testified, with reference to the conversation on the train, as follows:

"Mr. Mattison said to me, 'I have a contract with Lester Hardridge to get out some stone for you,' and he says, 'Who does the paying?' Now, that was all he said to me, and I said, 'I do the paying.' Now, that was everything that was said, relative to that contract, on the train; there was nothing else said about it."

One witness testified that some time before the stone was quarried the defendant said he had been out to look at the stone, which Mattison had quarried, in the schoolhouse at Porter, and that it was the kind of stone he wanted, and that he was going to get Mattison to quarry it for him. There was a great deal of other testimony in the case, but the principal part of the testimony bearing upon the question of the original contract is as stated above, and is ample to support the verdict of the jury. In fact, it seems conclusive that the defendant agreed to pay for the stone, and he scarcely denies it in his own testimony.

The defendant assigns as error the action of the court in permitting the plaintiff to testify as to the contents of an order, signed by defendant, for certain stone of the class known as "dimension stone." It was shown by the plaintiff that he produced the written paper at the trial in the justice court, identified it, and introduced it in evidence, and it was shown that he had not had it since, and that he and his attorney had been unable to find it, though they had endeavored to do so. Upon this showing, it was proper to admit evidence of its contents. The defendant complains that he was not permitted to explain the contents of

a certain card written by him to plaintiff's attorney. The card spoke for itself, and could not have been material upon the original contract between the parties. The defendant also complained that he was not permitted to introduce in evidence an account rendered by L. C. Hardridge, showing all money paid by him upon orders of L. C. Hardridge. The court did not commit error in excluding the statement. The defendant was permitted to show all moneys that he had paid plaintiff on the order of L. C. Hardridge, and it was not material what amounts he paid other parties upon his order.

The defendant complains of the instructions of the court, upon the ground that paragraphs 2 and 9 are conflicting. Paragraph 2, in substance, tells the jury that before plaintiff can recover they must find that there was a binding contract between plaintiff and defendant, and that, if there was no contract, then plaintiff could not recover. The ninth paragraph repeats the charge that there must be a contract before plaintiff can recover, and states, further, that: "A contract may be either expressed or implied, but there must be a union of minds upon that one subject, in order to constitute a contract." While the court says the contract may be either expressed or implied, the further statement that there must be a union of minds upon that subject must have made it clear to the jury that they must find more than a contract implied by law, and if the reading of the whole instruction leaves that clear the jury could not have misunderstood the court, and could not have found for plaintiff, unless they had found that there was a contract, agreed to by the defendant, before the work was done, and the case should not be reversed, though some of the language used was inaccurate.

The eleventh instruction complained of was to the effect that, if the jury found from the evidence that the defendant contracted with Hardridge to furnish the stone, it did not necessarily follow that the defendant did not contract with the plaintiff, but that that was to be considered as a circumstance in the case. This was no error. If defendant contracted to pay plaintiff, he would be compelled to do so, although he might have agreed to pay

Hardridge also. An examination of the testimony leads to the conclusion that the defendant contracted with Hardridge to get out the stone, but that the plaintiff, not being willing to rely upon Hardridge for his pay, had a definite understanding with the defendant that he (the defendant) would pay for the stone that plaintiff got out. There is nothing in the law which would prevent him from making a contract of this sort, and if the defendant promised to pay the plaintiff for the stone he would be compelled to do so, notwithstanding he had promised to pay Hardridge also.

The instructions requested by the defendant were all given in substance, except that portion of instructions 3 and 5 which told the jury that the law protected plaintiff for the services rendered. In other words, the contention of the defendant is that the jury should have been told in their instructions that the plaintiff had a lien upon the building for work done, and was protected, even though he had no contract. It was neither necessary nor proper to so instruct the jury. The jury were properly instructed that plaintiff could not recover, unless he had a contract; and it was neither necessary nor proper to instruct them as to what other remedy he might have to get his money, should they find that there was no contract.

The evidence in the case is ample to sustain the verdict, and, there being no material error in the case, it should be affirmed.

By the Court: It is so ordered.

All the Justices concur.